v. Bayer, A.G. I apologize to your client if I pronounced your name incorrectly. My name is Philip Beck. I represent Bayer, A.G. and Bayer Corporation. This is a case brought under the Illinois Consumer Fraud Act, and the main issue is whether the appellate court erred when it allowed plaintiff to proceed with her case without the consent of the plaintiff or the plaintiff's counsel. Even though her deposition established that she had not been actually deceived by Bayer's conduct. The appellate court's explanation for its ruling carves out an exception to the actual deception requirement of the Illinois Consumer Fraud Act that we submit would swallow the rule and render it meaningless. And we also submit that the appellate court's ruling is inconsistent with several decisions by this court stretching back over a ten year period. The Illinois Consumer Fraud Act states that a plaintiff who suffers actual harm, quote, as a result of, end quote, a violation of the act can recover damages. This court has held that through this statutory language, the act requires proof of proximate causation. That was the holding in Connick and also in Zeckman. Subsequent decisions by this court explained that to prove proximate causation, a plaintiff must show that he or she was actually deceived by the defendant's conduct. So the requirement is one of actual deception. For example, in Oliveira v. Amico in 2002, this court referred to the fact that the plaintiff never saw the allegedly misleading ads for premium gasoline and therefore was not actually deceived by defendant's conduct. In Avery v. State Farm in 2005, there the plaintiff did not believe that non-OEM parts used after car crashes were as good as OEM parts. And therefore, this court concluded, he was not actually deceived by the defendant's conduct. In Shannon v. Boise Cascade, 2004, there the plaintiff never read the allegedly misleading advertisements about wood siding and therefore, he was not actually deceived. And then most recently, in 2007, in Barbara's Sales v. Intel, the plaintiffs there did not see the defendant's internal statements about the Pentium IV chip and its performance and therefore, they could not have been deceived by those. Now the plaintiff's deposition in this case established that she was not actually deceived by Bayer's marketing of the prescription drug Baycol. She testified that she never looked at the label. She testified that she never read or saw any consumer advertisements for Baycol. She testified that she never read any articles or other materials about the benefits or risks of Baycol. In fact, she said she had never heard of Baycol in her life before her doctor prescribed it for her to help control her cholesterol levels. She testified that she relied 100% on her doctor to decide that she should take Baycol. The appellate court nevertheless held that she could proceed with her claim. The appellate court focused on what it called two very fine but significant distinctions it drew in the cases under the Consumer Fraud Act. The first distinction that the appellate court said it relied on was between cases involving affirmative deception and cases involving omissions or deception by concealment. And the second distinction that the court said it was relying on was between cases involving direct deception and those involving indirect deception. So I'd like to take up those two distinctions that the appellate court relied on because we believe that they do not support the exception that the appellate court carved out in this case. The first is this distinction between an affirmative misrepresentation and a distinction and a case involving deception by concealment. What the appellate court said was that the actual deception requirement that this court has articulated for Illinois Consumer Fraud Act cases is applied only in cases alleging, and now I'm quoting the appellate court, affirmative representations such as specific promises or false advertisements. That's how the appellate court characterized this court's precedent. And then the court went on to say, and I'm quoting again, in those types of cases the Supreme Court has said that in order to establish proximate cause, the plaintiff must allege and show that she was actually deceived by a specific promise or representation. And then the court, appellate court said that in this case, this case in contrast involves deception by concealment rather than an affirmative promise or representation. But the distinction drawn by the appellate court we believe is more apparent than real and in any event does not warrant doing away with this court's requirement of actual deception. The court's, this court's actual deception decisions, contrary to what the appellate court said, is that the plaintiff must allege and show that she was deceived by a specific promise or representation. These do in fact involve cases involving not only misrepresentations of affirmative fact, but also omissions, which is the same thing as deception by concealment. In Avery, for example, this court said that the core allegation was that the defendant did not disclose that it was using non, using inferior non-OEM parts rather than OEM parts. So that was a failure to disclose a deception by concealment, which this court said was the core allegation in Avery, and of course Avery applied the actual deception requirement. Similarly, in Shannon, this court noted that the plaintiff alleged that the defendant had failed to disclose features of its wood siding. And in Oliveira, the plaintiff alleged that Amoco either misrepresented that premium gas was superior to lower grades or that it failed to disclose the true facts about premium, excuse me, about premium gas. And in Barbara Sayles, the plaintiff alleged that Intel impliedly represented that a Pentium 4 was better than a Pentium 3, but the plaintiff also alleged that Intel was better than a Pentium 3. So in all those cases, the leading, among the leading cases requiring actual deception in order to prove proximate cause, they all involve allegations not only of affirmative misrepresentation, but also omissions of material fact. And just as the distinction drawn by the appellate court doesn't really accurately describe this court's precedence, it doesn't really accurately describe this case either. The appellate court is simply wrong when it said that the plaintiff's claim here involved only claims of omission or a deception by concealment and not affirmative misrepresentation. In fact, the complaint that the plaintiff filed in this case is like every other complaint that people file in consumer fraud actions. And that is it alleged at length both affirmative misrepresentations and omissions. Now, even if there were such an animal as a pure concealment by silence case, that does not mean that the plaintiff's case was a pure concealment by silence case. It does not mean that the actual deception requirement from this court's cases should be written out of the Illinois Consumer Fraud Act. The practical effect of doing that for a deception by concealment case would be to read the requirement out of the statute altogether. And the reason is simple, and that is that any misrepresentation case can be recast as an omissions case. All the plaintiff would have to do if this court were to endorse the appellate court's approach that where there's an omission case rather than an affirmative misrepresentation, there's no requirement of actual deception. If that were the law, then what would happen in every single consumer fraud case filed is that the plaintiff's lawyers would leave out allegations about affirmative misstatements and cast the case purely in the negative. Did the plaintiff allege that there was a deception of her or her doctor or the medical community or who are we talking about here? The third. The plaintiff alleged and admitted in her deposition that there was a deception of her or her doctor. The plaintiff admitted in her deposition that she was not deceived because she didn't know anything about Baycall and was not exposed to any statements. As to the doctor, we sought to depose the doctor and we sought discovery because we thought maybe the claim would be that we had deceived the doctor and then she relied on the doctor. The plaintiff objected to any discovery from her doctor and asserted the patient physician privilege and said we were not entitled to inquire into what her doctor said to her or the basis on which the doctor made his decision to prescribe Baycall. And what they have explained when they headed us off in the trial court and again, we were not able to do that. What they have said again in their briefs in this court is that their theory here is not reliant on actual deception of either the plaintiff or her doctor. Instead, their theory is that the medical community as a whole was misled by Bayer. And that theory is one that this court has rejected. It has been rejected repeatedly under the Illinois Consumer Fraud Act. It is essentially a fraud on the market theory. In the case against Amico, the Oliveira case, there the individual plaintiff admitted it involved claims that ads for premium gasoline were a part of Bayer. And that they were misleading because they suggested that premium was better than the lower grade. And then there was also the allegation that Amico had failed to disclose the true facts. And the plaintiff there admitted, as the plaintiff has here, that he did not see any of these ads. So those advertisements could not have actually deceived him and caused him to buy the premium gasoline. But the plaintiff alleged that, well, what happened is that the marketplace as a whole was misled. And people were willing to pay more because of these misleading ads and omissions. They were willing to pay more for premium than they would have if they had known the truth. And therefore, the market set the price for premium at this artificially high level, and that's what I paid. And so I was an indirect victim of the deception of others. Mr. Beck? Yes. Does that mean the only damages is that she paid a higher premium, or was she actually damaged? Well, she suffered no personal injuries whatsoever. This is not a case where she says that she suffered side effects. In fact, she's a putative class representative, and the class excludes anybody who has a claim against her. She doesn't claim for personal injuries. So the damage is the higher premium? Well, the damages here, as I understand it, are that she says that Bayer cost more, Bayer, excuse me, Baycol cost more than it would have if the truth had been known. People would not have been willing to pay as much for their medicine if they had known all the things that they say should have been disclosed. Counsel, wasn't it something to do with an $11 check and a $75 purchase? Yes. I don't think those numbers reflect their damage. They never got to specifying their damages. Here, the overpayment is a little more, the overpayment claim is a little more complicated than it would be even in the gasoline case, because here she's alleging that the market price for Baycol is $75. And yet, when it comes to prescription medicine, you know, there's all sorts of insurance and co-pays, and I think the $11 versus the $70 had to do with that, Your Honor. So this is kind of a market theory? Yes. Yes, it is a market theory, Your Honor. They try to stay away from that language because the market theory is barred by this Court's precedence. In Olivera, as well as the Boise Cascade case. In the Boise Cascade case, we had a situation where homeowners were saying that their wood siding was no good, and that Boise Cascade had failed to disclose these problems with the wood siding in their communications with the public. The homeowners, like Ms. DuBois, admitted that they never read any of these communications. They didn't know anything about what Boise Cascade was saying or not saying about the wood siding. And they also put in no evidence that their contractors or engineers or builders who built the house they lived in, that they had ever been exposed to any Boise Cascade communications. They didn't have any Boise Cascade statements about the wood siding. And instead, they said, well, the marketplace as a whole was exposed, and therefore, people used wood siding when they otherwise wouldn't have used it. And again, what this Court said, that that theory of indirect deception equated to the same kind of fraud on the market as the Boise Cascade case. This is the same approach that this Court rejected in Olivera. And the claim here is really, we believe, fundamentally indistinguishable from the ones involved and rejected by this Court in Olivera and the Boise Cascade case. As I said, the first distinction that the appellate court relied on was that the Boise Cascade case was a fraud. The second was the one between affirmative misrepresentations and omissions. All of the cases, including Shannon, the Boise Cascade case, as well as Olivera, involved not only allegations of affirmative misrepresentations, but also omissions. And then the second one that the Court focused on was this distinction between direct and indirect deception. And we've really been discussing this for the last few minutes in response to the Court's questions. Mr. Beck, if I remember your brief correctly, I think you agree that they could prove indirect deception, but you don't believe they've shown the nexus. That's absolutely correct, Your Honor. Let me just follow up with this. Based on what you talked about, Shannon, are there any allegations in this case that there was deception of the medical community and, in fact, the FDA? Yes, there are allegations like that. So now here's my last question on that. When you draw the distinction or comparison, however you want to view it, between Shannon, where you have home purchasers and the builders, and in this case between the patient and the doctor, medical community, FDA, if there are allegations here that the medical community was deceived, the FDA was deceived, but there were no allegations of such in Shannon, is that a worthy distinction or not? I'm sorry, no, I don't believe so, Your Honor. In fact, the cases very closely parallel one another. And as Your Honor noted, we agree that under Shannon, the actual deception of the plaintiff need not always be directly from the manufacturer to the plaintiff. There are circumstances where it can go through someone else. In Shannon, the homeowners sued for misrepresentations and omissions concerning the wood siding. The homeowners never saw any statements, so there was no direct deception. What this court said was that this is not, this lack of direct deception is not always fatal. The court said that if a plaintiff could show not that the community of contractors and builders and construction people as a whole were misled, but if the plaintiff who owned the house at 311 Elm Street could show that the people involved in making the wood siding decision at 311 Elm Street had been deceived, and therefore decided to put up Boise Cascades Wood Siding, then that might satisfy the actual deception requirement. But the court went on to say very explicitly that this does not apply, where instead of talking about the folks who put the siding at 311 Elm Street, you have no evidence on them whatsoever, and instead you're talking generally about the construction people. So now we move to this case, so how is it parallel? Like the homeowners, Ms. DeBose didn't know anything about any statements or omissions. Like the homeowners, Ms. DeBose has no evidence, and can have no evidence, that her doctor, the one who decided to prescribe Baycol, parallel to deciding to put the wood siding on 311 Elm Street, she can't put in any evidence that her doctor, the one who decided to prescribe Baycol, has no evidence that he was deceived and made his decision based on misrepresentations or omissions, because she has said that that's barred by the physician-patient privilege, and she has said that that is irrelevant under her theory. Her theory is that the medical community as a whole, like the construction community as a whole, were misled. And the pharmaceutical factors so as to say that... Consul, your time is up, does anyone have a question but answers for Justice covering, thank you very much. Thank you Good morning, Your Honors. May it please the Court, my name is James Carroll, along with Counsel at Table, William Quinlan, Class Counsel John Driscoll, and Sean Staples, we represent the plaintiff, Theresa DuBose in this matter, and the class that she represents. There are two main points that I would like to make in rebuttal today. One deals directly with the motion for summary judgment, and the other goes directly to the three certified questions which we allege should be, and argue should be, answered in the affirmative. Because Ms. DuBose has properly alleged a consumer claim both under a theory of concealment and indirect misrepresentation. Dealing specifically with the summary judgment issue first, I think you have to remember the procedural posture of this case. Before class certification was even decided, or right around the same time class certification was decided, the defendant in this matter filed a motion for summary judgment, a simple three-page motion. And then a week before argument then filed a motion, a supplemental, added on to the motion. And the court denied that motion because it was premature. And specifically the court said that there were certified questions that it wanted to be presented so that they could resolve the issues involved. So this motion for summary judgment, which the defendant is talking about specifically, should not even be properly before this court. It was premature and it was decided in the negative. And the only way that the defendant could have brought a motion here for summary judgment is a cell text type motion. And in that cell text type summary judge motion, they would have had to assert that the plaintiff lacked, not just that the plaintiff lacked evidence, but that they had to demonstrate that the plaintiff could not even acquire evidence to make its case. Counsel, as a preliminary matter, do you challenge the defendant's assertion that this court is not limited to consideration of the certified questions but can consider all questions in the circuit court proceedings? Your Honor, we would say that the summary judgment motion is an interlocutory order and it's not properly before the court. The appellate court accepted the certified questions and we believe that's what's properly before the court. But even if you do... Well, Mike, it appears to me that what happened, it went to the appellate court and they answered the certified questions. That's correct. And then when we issued the S.O., the supervisory order, they went beyond the certified questions. Am I mistaken about that? I believe what the appellate court did was that they refused to hear the summary judgment motion because it was an interlocutory order. They didn't discuss, nor did they hold, relative to the merits. So I don't believe it's properly... You don't think they went beyond the certified questions? I do.